DEWAYNE D. KNIGHT,

           Plaintiff,

v.                                               Case No. 19-cv-575-pp

DR. J. PATTERSON, M.D.,

           Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), SCREENING COMPLAINT AND REQURING PLAINTIFF TO FILE AN AMENDED COMPLAINT**

      Plaintiff Dewayne D. Knight, a prisoner representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendant failed to address his requests for medical care regarding his knee injury. Dkt. No. 1. The plaintiff also filed a motion for leave to proceed without prepaying the filing fee. Dkt. No. 2. This order resolves the plaintiff's motion and screens his complaint.

**I.     Motion to Proceed without Prepayment of the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) gives courts discretion to allow prisoners to proceed with their lawsuits without prepaying the $350 filing fee if they comply with certain requirements. 28 U.S.C. §1915. One of those requirements is that the prisoner pay an initial partial filing fee.

      On April 23, 2019, the court ordered the plaintiff to pay an initial partial filing fee of $0.89. Dkt. No. 5. The court received that fee on May 8, 2019. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee. The plaintiff must pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Standard

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint, or part of it, if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint's allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, district courts follow the principles in Twombly, by, first, "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. Id. Second, if there are well-pleaded factual allegations, the court must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that 1) someone deprived him of a right secured by the Constitution or laws of the United States and 2) whoever deprived him of that right was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B.  The Facts in the Complaint

The defendant has sued Dr. J. Patterson. Dkt. No. 1 at 5. He alleges that on September 8, 2018, while he was incarcerated at the Wisconsin Secure Program Facility, he injured his left knee playing basketball. Dkt. No. 1 at 7. He was seen by the WSPF nursing staff, then sent to "Boscobel Area Healthcare Emergency Room for evaluation and treatment" on that same day. Id. The plaintiff states that the staff at the emergency room provided him "with an immobilizer until pain improved (one week)" and recommended that he "recheck with nurse on Monday." Id.

The plaintiff says he began to experience significant pain in his left leg and could not bend it. Id. He alleges he submitted a health services request (HSR) that said:

> I went to the hospital Sat. 9-8-18 for an injury to my (L) knee & was placed on crutches & a knee immobilizer & yet NO ONE has contacted me to do a follow-up, address my injury, or anything. Furthermore, I wasn't ever given any pain meds. Why is this?

3

Id. The plaintiff states that R.N. A. Drone responded to the HSR on September 18, 2019. He says she wrote that he was "scheduled with the advanced care provider ('ACP') soon." Id.

The plaintiff asserts that two days later he submitted a second HSR. Id. at 8. In that request, he says he wrote that he was "experiencing extreme pain" in his left knee and that he reiterated the facts about his emergency room visit and noted that he had not been given any pain medication or had any follow-up consultations with anyone. Id. He says he stated that the pain was becoming more and more intense. Id. Drone responded to the request on September 22, 2018, telling the plaintiff that he was "scheduled very soon with the ACP." Id.

The plaintiff states that on September 25, 2018, he submitted an inmate complaint regarding his medical treatment. Id. at 9. He says the institution complaint examiner affirmed his complaint on October 5, 2018, "acknowledging the delay in treatment." Id. The plaintiff asserts that L. Alsum, the reviewing authority, "affirmed the plaintiff's complaint stating reason(s) for decision as 'pt. has been rescheduled and will be followed up.'" Id.

The plaintiff recounts that on October 16, 2018, he sent a third HSR. Id. He states that he wrote, "I am experiencing extreme pain in my (L) leg & I have NO pain meds." Id. The following day, R.N. M. Kremerling responded that the plaintiff's "Naproxen was put on the med cart 10-16-18." Id.

The plaintiff alleges that he submitted a fourth HSR after still "not seeing a nurse or doctor." Id. at 4. He says he stated in this requests that he "ha[d] been experiencing significant pain & stiffness in [his] (L) leg (knee area)." Id. He asserts he also wrote that he "ha[d] been wearing a knee immobilizer since 9-8-

4

18 & anytime [he] trie[d] to bend [his] knee [he was] in great pain." Id. The plaintiff says that on October 19, 2018, R.N. Honly responded that the plaintiff was "on providers schedule." Id.

The plaintiff states that he waited six more days and still did not see a nurse or doctor. Id. He states he submitted a fifth HSR asserting that he "ha[d] been wearing this knee immobilizer for almost two months," that the "pain in [his] (L) knee [was] becoming unbearable" and asking to see the doctor. Id. He stated in the HSR that he hadn't received any information about "how to deal with this." Id. at 8-9. The plaintiff explains that on October 26, 2018, R.N. S. Anderson responded to him by "checking the boxes 'scheduled to be seen in HSU' and the box 'ACP.'" Id. at 9.

The plaintiff summarizes that between the date of the injury—September 8, 2018—and approximately October 25, 2018, he was not seen by a nurse or a doctor at WSPF, and that he endured a forty-seven-day delay in treating his injury. Id. He explains that prior to his knee injury he had been diagnosed with patellofemoral joint degenerative joint disease. Id. at 10. He asserts that due to his "left leg being locked in the immobilizer for 45 plus days in the straight position" he suffered "significant pain and distress which aggravated and exacerbated [his] condition of significant patellofemoral joint degenerative joint disease." Id. He alleges that Dr. Patterson was responsible for "making sure that the patients on his case load are seen in a timely manner and given adequate medical care." Id. at 10. He asserts that Patterson deliberately failed to see and treat him for forty-seven days, despite his five HSRs. Id. The plaintiff alleges that Patterson was inside the WSPF health service unit multiple times

5

between September 8 and October 25, 2018 and had multiple opportunities to address the plaintiff's injury but failed to do so. Id. at 10-11.

The plaintiff seeks compensatory and punitive damages. Id. at 11.

C. Analysis

"The Eighth Amendment safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" Arnett v. Webster, 658 F.3d 742, 750 (7th Cir. 2011) (quoting Rodriguez v. Plymouth Ambulance Srv., 577 F.3d 816, 828 (7th Cir. 2009)). If prison officials are "deliberately indifferent to prisoners' serious medical needs," id., or they "act with 'deliberate indifference' to a substantial risk of serious harm to an inmate['s]" health or safety, Farmer v. Brennan, 511 U.S. 825, 828 (1994) (citation omitted), they violate the Constitution. A plaintiff alleging an Eighth Amendment violation based on deficient medical care must demonstrate 1) an objectively serious medical condition or serious harm and 2) an official's deliberate indifference to that condition or harm. Id. at 834; Arnett, 658 F.3d at 750. For screening purposes, the court finds that the plaintiff has sufficiently alleged he suffered an objectively serious medical condition: his injured knee.

As for the Eighth Amendment's subjective component, the Supreme Court has held that deliberate indifference requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. A prison official has a sufficiently culpable state of mind when he "knew of a substantial risk of harm to the inmate and acted or failed to act in

6

disregard of that risk." Norfleet v. Webster, 439 F.3d 392, 396 (7th Cir. 2006) (citing Walker v. Benjamin, 293 F.3d 1030, 1037 (7th Cir. 2002)).

The plaintiff has sued only Dr. J. Patterson. He asserts that Patterson was responsible for ensuring "the patients on his case load are seen in a timely matter and given adequate care." Dkt. No. 1 at 10. The plaintiff does not explain whether Dr. Patterson was his doctor. He does not explain whether Dr. Patterson was the head doctor in the Health Services Unit or describe the role Dr. Patterson played at the institution. He does not explain why he believes that Dr. Patterson knew or would have known about his HSRs. Even if Dr. Patterson was a supervisor in the Health Services Unit, that would not make him liable for the delay in treating the plaintiff's knee. For a supervisor to be held liable for a subordinate's violation of someone's constitutional rights, the supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye" to the conduct. Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995) quoting Jones v. City of Chi., 856 F.2d 985, 992 (7th Cir. 1988)). "[S]upervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not labile." Jones, 856 F.2d at 992. The plaintiff has not stated a claim against Dr. Patterson.

The complaint clearly alleges that *somebody* disregarded his repeated reports of knee pain. He says that in four of his HSRs he wrote that he was experiencing pain. While Nurses Drone, Kremerling, Honly and Anderson responded to those requests in writing, none of them saw him, and it appears that none of them made arrangements for anyone else to see him because no medical professional saw the plaintiff for about forty-seven days. "Delaying treatment, even if not life threatening, can be evidence of deliberate

7

indifference," Wilson v. Adams, 901 F.3d 816, 822 (7th Cir. 2018) (citing Gutierrez v. Peters, 111 F.3d 1364, 1371 (7th Cir. 1997)). The plaintiff, however, did not name Drone, Kremerling, Honly or Anderson as defendants. "Numerous cases . . . have established that, when the substance of a *pro se* civil rights complaint indicates the existence of claims against individual officials not specifically named in the caption of the complaint, the district court must provide the plaintiff with an opportunity to amend the complaint." Donald v. Cook Cty. Sheriff's Dept., 95 F.3d 548, 555 (7th Cir. 1996). The court will give the plaintiff the opportunity to amend the complaint, to name as defendants those people whom he believes were directly responsible for the delays in failing to address his pain.

The court will include with this order a blank complaint form; the plaintiff must use this form for his amended complaint. He must write the word "Amended" at the top of the first page, next to the word "Complaint." He must put the case number for this case—Case No. 19-cv-575—in the field for the case number. He must list in the caption of the complaint every person whom he believes was personally responsible for the delay in his treatment. If he doesn't know the name of a particular person, he may use a "John Doe" or "Jane Doe" placeholder and describe the person—"John Doe health services unit coordinator," for example. He must repeat in the amended complaint all the allegations he made in the original complaint. (The court is including a copy of the original complaint with this order, so that he can copy the allegations if he needs to.) The amended complaint must be complete in itself, because it will take the place of the original complaint. If the plaintiff names a defendant in the caption, he must explain in the statement of facts how that

8

person knew that the plaintiff was in pain and what that person did to delay his receiving treatment for the pain. He must do that for every person he names in the complaint.

If the plaintiff files the amended complaint by the deadline the court sets below, the court will screen it.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **ORDERS** that if the plaintiff wishes to proceed with this case, he must file an amended complaint in time for the court to receive it by the end of the day on**, November 13, 2020**. If the court does not receive the amended complaint by the end of the day on November 13, 2020, the court may dismiss the plaintiff's case for failure to state a claim.

The court **ORDERS** that the agency having custody of the plaintiff shall collect from his institution trust account the $349.11 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state, or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

9

The court **ORDERS** that, under the Prisoner E-Filing Program, the plaintiff must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court.[1] If the plaintiff is no longer incarcerated at a Prisoner E-Filing institution, he will be required to submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to prosecute. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 5th day of October, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
Chief United States District Judge**

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.