DEWAYNE D. KNIGHT,

                Plaintiff,

v.                                                                                       Case No. 19-cv-575-pp

DR. J. PATTERSON, NURSE SONYA ANDERSON,
NURSE AMANDA DRONE, NURSE HONLEY,
and NURSE KREMERLING,

                Defendants.

## ORDER SCREENING AMENDED COMPLAINT (DKT. NO. 16)

Plaintiff Dewayne D. Knight, representing himself, filed a complaint alleging that defendant Dr. Patterson violated his civil rights under 42 U.S.C. §1983 by failing to address his requests for medical care regarding his knee injury. Dkt. No. 1. The court screened the plaintiff's complaint on October 5, 2020 and gave him the opportunity to file an amended complaint by November 13, 2020, identifying the other health services unit employees who he believes ignored his requests. Dkt. No. 15. The court received the plaintiff's amended complaint on October 12, 2020. Dkt. No. 16. This order screens the amended complaint.

**I.    Screening the Amended Complaint (Dkt. No. 16)**

    A.    <u>Federal Screening Standard</u>

As the court explained in its original screening order, it must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court

1

must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by

2

plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.     Allegations in the Complaint

The amended complaint names Dr. Patterson, Nurse Sonya Anderson, Nurse Amanda Drone, Nurse Honly and Nurse Kremerling as defendants. Dkt. No. 16 at 1.

The plaintiff alleges that on September 8, 2018, while he was incarcerated at the Wisconsin Secure Program Facility, he injured his left knee while playing basketball. Id. at ¶5. WSPF nursing staff examined him, after which he was sent to the "Boscobel Area Healthcare Emergency Room for evaluation and treatment" that same day. Id. at ¶6. After emergency room staff examined him, they gave him an immobilizer for his knee until the pain improved and a recommendation that he "re-check with a nurse on Monday." Id. at ¶7.

The plaintiff alleges that he began to experience significant pain in the leg because it was in the immobilizer in "the straight position." Id. at ¶8. On September 17, 2018, he wrote a health services request (HSR) that stated:

> I went to the hospital Saturday September 8, 2018 for an injury to my (L) knee & was placed on crutches & an immobilizer & yet no one has contacted me to do a follow-up, address my injury or anything. Furthermore, I wasn't even given any pain meds. Why is this?

Id. at ¶9 (emphasis in the original). The plaintiff asserts that defendant Nurse Drone responded to his HSR stating, "You are scheduled with the advance care

provider 'ACP' soon." Id. at ¶10. The plaintiff alleges that he "was never seen by Nurse Drone or the ACP." Id. at ¶11.

Two days later, on September 20, 2018, the plaintiff submitted a second HSR that stated:

> I am experiencing extreme pain in my (L) knee. I went to the hospital on 9.8.18 & I have not been given any pain meds, nor have I seen any nurses, doctors, etc., since I went to the hospital to address this knee injury. This pain is become more & more intense.

Id. at ¶12. Nurse Drone responded two days later, telling the plaintiff that "you are scheduled very soon with the ACP." Id. at ¶13. The plaintiff says that despite repeatedly complaining of pain in the knee, Nurse Drone never saw him and did not "attempt to address his pain." Id. at ¶14.

On October 16, 2018, the plaintiff submitted a third HSR, stating that he was "experience extreme pain" and that he had no pain medication. Id. at ¶15. The next day, defendant Nurse Kremerling responded to the HSR, stating that the plaintiff's "naproxen was put on the med cart 10.16.18." Id. at ¶16. Nurse Kremerling never saw the plaintiff to address his pain. Id. at ¶17.

On October 18, 2018, still not having seen a nurse or a doctor, the plaintiff filled out another HSR stating, "I have been experiencing significant pain & stiffness in my (L) leg (knee area). I have been wearing a knee immobilizer since 9.8.18 & due to not being able to bend my (L) leg, I am in great pain." Id. at ¶18. Defendant Nurse Honly responded, telling the plaintiff that he was on the provider's schedule. Id. at ¶19. The plaintiff alleges that Nurse Honly never saw him to address his pain. Id. at ¶20.

4

Another six days passed without the plaintiff seeing a nurse or doctor; on October 25, 2018, the plaintiff submitted his fifth HRS, stating, "I have been wearing this knee immobilizer for almost 2 months, the pain in my (L) knee is becoming unbearable. I would like to see the doctor. I haven't been given any info on how to deal with this." Id. at ¶21. Defendant Nurse Anderson responded to the HSR the next day by checking the "scheduled to be seen in HSU" and the "ACP" boxed. Id. at ¶22. The plaintiff states that Nurse Anderson never saw him to address his pain. Id. at ¶23.

The plaintiff says that defendant Dr. J. Patterson was his assigned primary care doctor at WSPF, and that "[Patterson] [wa]s responsible for addressing [the plaintiff's] primary care needs that [were] outside of the scope of nursing staff." Id. at ¶24. The plaintiff asserts that between September 8, 2018 and the end of October 2018, "Dr. Patterson had direct knowledge of [the plaintiff's] complaints of pain." Id. at ¶25. The plaintiff points to notes Dr. Patterson made in his medical records indicating that Patterson could not see the plaintiff on two occasions. Id. According to plaintiff, on September 11, 2018, Dr. Patterson noted he was "unable to see [the plaintiff] second degree to other activities," and on September 13, 2018, he wrote that he was unable to see the plaintiff due to "time constraints." Id.

The plaintiff filed an inmate complaint on September 28, 2018 about the "continued delay in treatment." Id. at ¶26. On October 5, 2018, the complaint examiner affirmed the plaintiff's inmate complaint, "acknowledging the delay in treatment." Id. at ¶27. Ten days later, the complaint reviewing authority

5

affirmed the complaint, stating that "PT has been rescheduled and will be followed up." Id. at ¶28. The plaintiff says the reviewing authority's response makes clear that as of the date of the response, the plaintiff had not been seen. Id. at ¶29. The plaintiff asserts that the defendants all had knowledge of his complaints of pain and could have addressed it, but did not so do for the approximately forty-five days between September 8, 2018 and October 25, 2018. Id. at ¶¶31-32.

The plaintiff indicates that he is suing the defendants in their individual and official capacity. Id. at ¶38. He seeks compensatory damages of $500/per day for the forty-five days the defendants failed to treat him, for a total of $112,500, and punitive damages for $1500/per day for the forty-five day period, for a total of $337,500, as well as reimbursement of costs and fees. Id. at 8.

C. Analysis

In its original screening order, the court outlined the Eighth Amendment standard for deliberate indifference to serious medical needs. Dkt. No. 15 at 6-7. Briefly, a plaintiff alleging an Eighth Amendment violation based on deficient medical care must demonstrate 1) an objectively serious medical condition or serious harm and 2) the defendant's deliberate indifference to that condition or harm. Farmer v. Brennan, 511 U.S. 825, 828 (1994); Arnett v. Webster, 658 F.3d 742, 750 (7th Cir. 2011). For screening purposes, the court finds that the plaintiff's injured knee was an objectively serious medical condition.

Turning to the subjective component, the plaintiff must allege "that an

6

official actually knew of and disregarded a substantial risk of harm. Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016). The plaintiff also "must show more than mere evidence of malpractice." Id. The plaintiff must show that the prison official's choices "were so 'significant a departure from accepted professional standards or practices' that it is questionable whether they actually exercised professional judgment." Stallings v. Liping Zhang, 607 F. Appx. 591, 593 (7th Cir. 2015) (quoting Pyles v. Fahim, 771 F.3d 403, 409 (7th Cir. 2014)). This includes circumstances where a prison official fails to act or do anything to address the serious medical need. See Gayton v. McCoy, 593 F.3d 610, 623-24 (7th Cir. 2010) (reversing summary judgment in favor of a nurse who refused to examine or treat a vomiting inmate). It also includes circumstances where an official delays necessary treatment, aggravating a condition or needlessly prolonging a plaintiff's pain. Gomez v. Randle, 680 F.3d 859, 865-66 (7th Cir. 2012).

In alleging that the defendants ignored his repeated complaints of pain forty-five days, the plaintiff has stated sufficient facts to allow him to proceed on a claim of deliberate indifference to medical needs under the Eighth Amendment against all the defendants. The emergency room staff, who examined the plaintiff on a Saturday, recommended follow-up care as soon as the following Monday. Dkt. No. 15 at ¶7. The plaintiff alleges, however, that he did not receive that follow up care until forty-five days later, and he alleges that this delay needlessly prolonged his pain. His allegations detail how each defendant nurse actually knew he was in "extreme" and "unbearable" pain, but

7

instead of addressing that pain or examining the plaintiff and providing treatment to sustain him while waiting for his appointment with the advance care provider, simply told him that he was scheduled with an advance care provider. Id. at ¶¶10, 13, 19, 22. Regarding Dr. Patterson, the plaintiff alleges that he was the plaintiff's primary care doctor at WSPF and provides specific examples of Dr. Patterson indicating he did not have time to see the plaintiff. Id. at ¶¶24-25. While the two examples the plaintiff provides occurred early in the forty-five-day period, at the screening stage in the case, the allegations are sufficient to state a claim that Dr. Patterson knew about the plaintiff's pain and delayed or refused to provide treatment.

The plaintiff also sues all the defendants in their individual and official capacities. Id. at ¶38. The court will not allow the plaintiff to proceed against any of the defendants in their official capacities because he seeks only monetary damages. Where a plaintiff seeks other than injunctive relief, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).

## II. Conclusion

The court **ORDERS** that the plaintiff's proposed amended complaint is the operative complaint in this case. Dkt. No. 16.

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the amended complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on defendants Dr. J. Patterson, Nurse Sonya Anderson, Nurse Amanda

8

Drone, Nurse Honly and Nurse Kremerling. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within 60 days.

The court will issue a separate order **REFERRING** this case to Magistrate Judge Joseph for pretrial proceedings.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The plaintiff is reminded that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his whereabouts may result in the court dismissing this case without further notice.

The court will include a guide entitled "Answers to Prisoner Litigants' Common Questions," which contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 28th day of October, 2020.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**